UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AEGIS, MISSION ESSENTIAL PERSONNEL, L.L.C,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNIVERSAL FUNDING CORPORATION,<br><br>　　　　　Defendant. | NO. CV-05-0351-EFS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

　　A Preliminary Hearing was held in the above-captioned matter on December 19, 2005. Plaintiff Aegis, Mission Essential Personnel, L.L.C. ("Aegis") was represented by John Glowney, and Greg Johnson appeared on behalf of Universal Funding Corp ("Universal"). Before the Court was Aegis' Motion for Preliminary Injunction (Ct. Rec. 2), requesting the issuance of a preliminary injunction ordering Universal to (1) release $385,817.65 paid to it by the State Department of the United States of America ("State Department") on Aegis' accounts and (2) terminate an assignment of payment that was part of the factoring service agreement between the parties. In response, Universal contends Aegis agreed to assign all of its accounts receivable to Universal for one year and, thus, Aegis defaulted on the agreement and owes Universal an

ORDER ~ 1

undeterminable amount of money.[1]  After reviewing the submitted materials and relevant rules and case law and hearing oral argument, the Court is fully informed. This Order serves to supplement and memorialize the Court's bench ruling granting Aegis' motion.

**A.  Preliminary Injunction Standard**

Federal Rule of Civil Procedure 65 allows for entry of a preliminary injunction following notice to the adverse party. FED. R. CIV. P. 65(a)(1). To be entitled to a preliminary injunction, the party seeking the preliminary injunction must demonstrate either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits that the balance of hardship tips sharply in its favor. *Textile Unlimited, Inc. v. A..BMH and Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001) (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir.1980)); *F.D.I.C. v. Garner*, 125 F.3d 1272, 1277 (9th Cir. 1997). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998) (quoting *United States v. Nutri-cology, Inc.*, 982 F.2d

---

[1] Universal also asks the Court to strike ¶¶ 7, 8, and 10 of Gregory Miller's affidavit on the grounds that Mr. Miller does not have personal knowledge of such facts. The Court denies Universal's request given that ¶ 7 is based on a record kept in the regular course of conducted business activity, *see* FED. R. EVID. 803(6), and ¶¶ 8 and 10 are admissions by a party opponent under Federal Rule of Evidence 801(d)(2).

ORDER ~ 2

394, 397 (9th Cir. 1992)).  A preliminary injunction is an equitable remedy and, thus, the moving party must show that it cannot be made whole by an adequate remedy at law, *i.e.* damages.  *Los Angeles Memorial Coliseum Comm'n*, 634 F.2d at 1202.  Federal Rule of Civil Procedure 65(c) requires the party seeking the preliminary injunction to provide a bond in an amount the court deems proper "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

**B.    Success on Merits** & **Irreparable Injury**

In order to prevail on a breach of contract claim, Aegis will need to show the parties entered into a contract, Universal materially breached the contract, and Aegis was injured as a result of such breach. *See St. John Med. Ctr. v. Dep't. of Soc. & Health Servs.*, 110 Wash. App. 51, 64 (2002).  A breach is material if it relates to an essential element of the contract. *McEachren v. Sherwood & Roberts, Inc.*, 36 Wash. App. 576, 580 (1984).

There is no dispute the parties entered into a contract, but the parties' disagree as to which party breached the contract first, if either, and whether one was injured by such breach.  The Court finds Aegis has shown a likelihood of succeeding on its position that, even if Aegis is found to have wrongfully terminated the agreement early, Universal's damages are limited to approximately $2,875 per month, for an approximate total award of $20,125.  Paragraph 11 of the Purchase and Assignment Agreement provided "[s]hould Client [Aegis] for any reason whatsoever, voluntarily or involuntarily, terminate this Agreement or should this financing become inactive prior to the Termination Date then

ORDER ~ 3

in that event Client shall be liable and shall pay to Universal an Early Termination Fee prior to the Termination Date.  This prepaying fee is based on the terms specified in paragraph 3(m), above." In turn, Aegis in Purchase and Assignment Agreement ¶ 3(m) agreed to:

> as stated in the Factoring Proposal, Seller will offer for purchase invoices at certain dollar amount per month, herein referred to as Receivable Line.  In the event that purchased invoices are less than the Receivable Line, a minimum requirement of half the Receivable Line is due each month, Purchaser is entitled to deduct from future advanced and/or payments the fees that would have been earned on the invoice shortfall for the annual period and/or any outstanding periods per this Agreement.

The Factoring Agreement/Proposal defined "Receivable Line" as "Five hundred thousand ($500,000.00) revolving line of capital per month . . . ."  Accordingly, the Court finds Aegis has shown it is likely to succeed on its position that it was not required to submit all invoices to Universal, but rather at least $500,000 worth of invoices without being subject to terms in second sentence of ¶ 3(m); furthermore, Aegis has shown the likelihood of succeeding on its argument that Universal's remedy, if Aegis terminated the agreement early, was set forth by Paragraph 3(m) of the Purchase and Assignment Agreement.  Therefore, if the Court finds the Early Termination Fee is to be enforced, Universal will be entitled to $2,875 per month ($250,000 multiplied by the 1.15% servicing fee), for an approximate total fee of $20,125; this amount is considerably less than the $385,817.65 being held by Universal for the purpose of ensuring it is paid by Aegis.

    The Court also finds equitable relief is appropriate given that Aegis' goodwill and business reputation will be irreparably injured if it is not allowed to receive payments from its clients directly and

ORDER ~ 4

obtain the funds currently held by Universal, given that Aegis needs such funds to pay business expenses, thereby maintaining its business reputation and goodwill.  Universal contends Aegis' failure to allow Universal to inspect Aegis' books pursuant to ¶ 10 of the Purchase and Assignment Agreement prevents Aegis from obtaining equitable relief.  The Court agrees the Purchase and Assignment Agreement clearly lets Universal inspect Aegis' books; however Universal's request followed Universal's decision not to factor the Third, Fourth, and Fifth Accounts.  Accordingly, the Court concludes Aegis' failure to allow Universal to inspect Aegis' books does not prevent Aegis from obtaining equitable relief.

Accordingly, the Court orders Universal to deposit $50,000 of the Fifth Account payment with the Registry of the Court, to be deposited in an interest bearing account.  This is twice the amount owed to Universal under Aegis' reading of ¶¶ 3(m) and 11 of the Purchase and Assignment Agreement, an argument the Court finds, on the current record, has a probability of success.  Because this amount appears to be more than sufficient to cover any potential judgment award to Universal, the Court concludes Aegis is not required to post a bond under Rule 65(c).  Based on the same analysis, the Court finds grounds exist to terminate the State Department's direct payment to Universal.  The remainder of the Fifth Account ($335,817.65) shall be submitted to Aegis because Universal has failed to show a legal basis for maintaining control of such funds.

**C.   Serious Questions & Balance of Hardships**

For the reasons given above, the Court also finds Aegis has shown there exist serious questions as to the merits and the balance of

hardships tips in Aegis' favor given its need to receive payment directly from its clients to pay its overhead costs in order to maintain its business reputation, rather than receive advancements from Universal, given Universal's refusal to advance funds. *See Hollis v. Garwall, Inc.*, 88 Wash. App. 10, 16 (1977).

For the reasons given above, **IT IS HEREBY ORDERED**: Aegis' Motion for Preliminary Injunction **(Ct. Rec. 2)** is **GRANTED. Within two weeks**, Universal shall **send the appropriate notice as ordered by this Court in a form acceptable to Aegis** to the State Department releasing the assignment of payment. A copy of such notice shall be provided to Aegis. Also, within two weeks of this Order, Universal shall submit **(1) $50,000 of the Fifth Payment to the Registry of the Court**, which shall be deposited in an interest bearing account pending resolution of the merits of this case, and **(2) the remainder of the Fifth Payment ($335,817.95) to Aegis**. Notice of the compliance with the above Court orders shall be filed with the Court within three weeks of the date of this Order.

**IT IS SO ORDERED.** The District Court Executive is directed to file this Order and provide copies of this Order to counsel.

**DATED** this  20th  day of December, 2005.

          S/ Edward F. Shea
          EDWARD F. SHEA
          United States District Judge

Q:\Civil\2005\0351.prelim.inj.wpd

ORDER ~ 6